1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH LLOYD,

         Plaintiff,

    v.

KEVIN MULLENEX,

         Defendant.

Case No. 19-cv-03999-NC

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 21

    In this fraud cause, defendant Kevin Mullenex moves to dismiss all claims in plaintiff Kenneth Lloyd's complaint. Dkt. No. 21. Mullenex argues that Lloyd's fraud claims are insufficient under Federal Rule of Civil Procedure 9(b), that some claims are time-barred by the statute of limitations, and that other claims fail under Rule 12(b)(6). The Court FINDS that Lloyd's fraud, fraudulent inducement, and negligent misrepresentation claims are sufficiently alleged under Rule 9(b) and are not time-barred. The Court DENIES the motion to dismiss those claims. The Court further FINDS that Lloyd's conversion, breach of fiduciary duty, intentional interference with prospective business relations, negligent interference with prospective business relations, and unfair competition claims are insufficiently pled under Rule 12(b)(6). The Court GRANTS the motion to dismiss those claims and GRANTS Lloyd leave to amend.

## I.  Background

This case arises out of the creation and later sale of a startup company by one of its two founders.  Dkt. No. 1, Complaint.  The following facts are alleged in the complaint and, for the purposes of this motion, are taken as true.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiff Kevin Lloyd and defendant Kenneth Mullenex founded a technology company (called MetaIntell, Inc., then MetaIntelli, Inc., then Mi3 Security, Inc.) together in March 2013.  Compl. ¶ 8.  Mullenex promised Lloyd a salary of $185,000 per year, so Lloyd quit his job in April 2013 to work for the company full-time.  *Id.*  Lloyd asked for 50% interest in the company, but Mullenex insisted that he get 85% and Lloyd only 15% because Mullenex said he would invest $1 million into the company while Lloyd was unable to make a contribution.  *Id.* ¶ 9.  Mullenex held 6.8 million shares and Lloyd 1.2 million shares at the time of the company's incorporation in March 2013.  *Id.* ¶ 10.  They were also the entirety of the company's board of directors.  *Id.* ¶ 11.  Over time, other shares were sold to other shareholders and other members joined and left the board of directors.  *Id.*  Mullenex at all times retained a controlling share and he served as CEO while his wife served as CFO.  *Id.* ¶ 10, 8.

Lloyd was never paid $185,000 per year for his full-time work for the company.  *Id.* ¶ 20.  Lloyd was paid nothing for his first year of work and a fraction of the promised salary for subsequent work.  *Id.*  When Lloyd asked Mullenex about the promised $185,000 salary, Mullenex said that Lloyd would get the money when the company met certain benchmarks.  *Id.*  Lloyd believed that when funding was obtained or when cash flow improved, he would be made whole.  *Id.*  Lloyd also believed that if he wasn't paid prior to an equity event, then he would receive proceeds covering the unpaid salary from an acquisition.  *Id.*  Mullenex never invested $1 million of his own funds into the company. *Id.* ¶ 19.  What funds Mullenex did contribute, he repaid himself in full, with interest, out of company proceeds.  *Id.*

Mullenex kept Lloyd in the dark about the company's finances.  *Id* ¶ 23.  He told

Lloyd that he had structured the company's equity such that their respective shares of ownership would not be diluted until the company received venture funding. *Id.* ¶ 21. This was not actually true. *Id.* Mullenex also told Lloyd that eventually Lloyd would receive a greater percentage of company ownership and a higher salary. *Id.* ¶ 24. Mullenex said he would work with a patent attorney to file patent applications that Lloyd prepared, but never did so within the statutory time limit—eventually, a competitor patented some of Lloyd's inventions instead. *Id.* ¶ 29.

Mullenex refused to hold board meetings or to provide Lloyd with financial statements or other documents. *Id.* ¶ 26. Mullenex charged the company for his personal expenses and hired his friends as overpaid consultants. *Id.* ¶ 27. Mullenex structured the company as an S Corporation but risked its S Corporation status by breaching the terms of convertible notes that provided for issuing of preferred stock upon maturity. *Id.* 32.

By 2017, Mullenex was not seeking new sales for the company and was not collecting receivables from existing customers. *Id.* ¶ 35. Lloyd confronted Mullenex about this abandonment of responsibilities in December 2017. *Id.* ¶ 36. In 2018, Lloyd discovered via LinkedIn that Mullenex had taken on several board advisory positions for other companies rather than giving his time and effort to their company. *Id.*

Lloyd and his family were in desperate financial circumstances, living with in-laws or in a cramped trailer as Lloyd struggled to provide for his family's basic needs. *Id.* ¶ 22. Mullenex took advantage of this vulnerability to manipulate Lloyd into agreeing to a sale of the company with terms that disproportionately advantaged Mullenex and his family and friends. *Id.*

In January 2018, a company called Zimperium, Inc. provided Mullenex with a letter of intent to acquire Mi3's assets. *Id.* ¶ 38. Mullenex concealed this letter from Lloyd and negotiated an Asset Purchase Agreement with Zimperium that funneled most of the financial benefits away from Lloyd and toward Mullenex and his family and friends. *Id.* Mullenex's poor negotiating caused Zimperium's offer price to fall. *Id.* ¶ 40. In April 2018, Mullenex pressured Lloyd to falsify records as part of the sale. *Id.* ¶ 47. Lloyd

3

refused, resigned, and reported Mullenex's conduct to Zimperium. *Id.* Nonetheless, Mullenex forced Lloyd to accept the deal with Zimperium even though it benefitted Mullenex and did not fairly compensate Lloyd. *Id.* ¶¶ 48–51. As of June 2019, Lloyd had not received his fair share of the initial cash payment from Zimperium, had received no proceeds from the holdback payment from Zimperium, and had not been compensated for his work for Mi3. *Id.* He believes that Mullenex's continued mismanagement will continue to result in reductions in Lloyd's payouts from Zimperium in the future. *Id.*

Lloyd filed this case in July 2019 for claims of fraud, fraud in the inducement, negligent misrepresentation, conversion, breach of fiduciary duty, intentional interference with prospective business relations, negligent interference with prospective business relations, unfair competition, and accounting. Dkt. No. 1. Mullenex moved to dismiss all claims in the complaint. Dkt. No. 21. Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 8, 19.

## II.    Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill*, 80 F.3d at 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. Discussion

#### A. Request for Judicial Notice

Defendant requests that the Court take judicial notice of two documents attached to his motion to dismiss. Dkt. No. 21. The documents are both "Unanimous Written Consent[s] of the Board of Directors of Metaintell, Inc." dated March 19, 2013, and April 12, 2013. Dkt. No. 21, Exs. A and B. Mullenex argues that the Court should take judicial notice of these records because they are incorporated by reference in the complaint. However, the complaint does not refer to these materials. While the documents might represent written agreements that are consistent with some of the complaint's factual allegations, Lloyd never mentions the existence or content of these documents anywhere in the complaint. The Court thus FINDS that the documents are not incorporated by referenced into the complaint and DENIES the request for judicial notice.

#### B. FRCP 9(b)

Under Federal Rule of Civil Procedure 9(b), a plaintiff bringing a claim sounding in fraud "must state with particularity the circumstances constituting fraud or mistake," including "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This means including facts such as "times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). In short, the plaintiff must allege the who, what, when, where, and how of the fraudulent conduct. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). This heightened pleading standard applies to fraud, fraud in the inducement, and negligent misrepresentation. *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255 (N.D. Cal. 2014); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 113 (N.D. Cal. 2013).

Here, Mullenex argues that Lloyd has not met the Rule 9(b) pleading standard for his claims for fraud, fraud in the inducement, and negligent misrepresentation. Dkt. No. 21. The Court disagrees. Though the complaint does not provide direct quotes from Mullenex or time-stamped correspondence, it does allege a timeline of events with months

and years of occurrences and describes many representations made by Mullenex in detailed summary form. For instance, the complaint discusses the November 2013 joining and March 2014 departure of board member Michael Stilton; a September 2018 Statement of Information filed by Mullenex with the California Department of Corporations; the $185,000 salary promise and the 15%/85% share split agreed upon during the company's founding; a December 2017 confrontation between Lloyd and Mullenex about Mullenex's other jobs; and dates throughout the 2018 asset sale to Zimperium. Compl. ¶¶ 11, 8, 9, 36, 38–40. These facts depict the who, what, where, when, and how of Mullenex's alleged conduct.

The point of the heightened pleading requirement under Rule 9(b) is to "identify the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegation." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). When the defendant has particular knowledge of the facts constituting the circumstances of the alleged fraud, the Rule 9(b) requirement may be relaxed. *Id.* Here, taking the allegations of the complaint as true, Mullenex has particular knowledge of the facts of the alleged fraud. Lloyd has detailed sufficient information about his fraud claims to put Mullenex on notice to answer the complaint. The Court FINDS that the complaint is sufficiently particular under Rule 9(b) as to the fraud, fraud in the inducement, and negligent misrepresentation claims.

### C. Statute of Limitations

In California, fraud claims are subject to a statute of limitations of 3 years. Cal. Code Civ. Proc. § 338(d). Mullenex argues that Lloyd's fraud claims are time-barred. The complaint alleges that Mullenex first promised Lloyd the $185,000 salary around the company's founding in March 2013 and that Lloyd quit his job in reliance on that promise in April 2013. Compl. ¶ 20. Lloyd was never paid that salary, so Mullenex argues that Lloyd was on notice of these claims from that time. Dkt. No. 21 at 11. However, the complaint alleges that Lloyd did not make important discoveries related to his claims— such as Mullenex's failure to invest the promised $1 million into the company, Mullenex's

repayment of himself with interest out of the sale proceeds, Lloyd's shares become invalidated due to Mullenex's mistakes, and ultimately Mullenex's intention not to ever repay Lloyd for the time he worked for Mi3—until between 2016 and 2018. Compl. ¶¶ 9, 19, 34. These facts are all tied up in the same conduct that allegedly resulted in Lloyd never being paid the $185,000 he was promised. Therefore, Lloyd sufficiently alleges that he did not discover the conduct until within three years of filing the complaint. The Court FINDS that Lloyd's claims are not barred by the statute of limitations.

### D. Breach of Fiduciary Duty

The elements of a claim for breach of fiduciary duty are the existence of a relationship giving rise to the duty, breach, and damage proximately caused. *Daly v. Yessne*, 131 Cal. App. 4th 52, 64 (2005). Some claims for breach of fiduciary duty can only be brought on behalf of a company, not on behalf of individual shareholders. For example, a claim based on an executive's mismanagement of company affairs vests in the corporation rather than in individual shareholders. *In re Sagent Tech., Derivative Litig.*, 278 F. Supp. 2d 1079, 1090–91 (N.D. Cal. 2003). Claims must be brought by the company "if the gravamen of the complaint is injury to the corporation," rather than to a particular shareholder. *Schuster v. Gardner*, 127 Cal. App. 4th 305, 209 (2005). Additionally, when all shareholders are treated the same, there is no breach of fiduciary duty. *Jones v. Ahmanson & Co.*, 460 P.2d 464, 471 (1969).

Here, the complaint is unclear as to what conduct Lloyd intends to form the basis of his breach of fiduciary duty claim. The complaint regularly mentions Mullenex's "fiduciary duty," but the complaint does not specify what facts are part of this claim. Compl. ¶¶ 85–88. The parties disagree in their briefing about whether Lloyd can bring this claim as an individual shareholder; the answer to that question depends on what conduct forms the basis of it. The complaint requires further specificity for Lloyd to show that he is entitled to bring this claim on his own behalf. As such, the Court GRANTS the motion to dismiss the claim for breach of fiduciary duty. The plaintiff could allege additional facts to state a valid claim, so the Court GRANTS leave to amend.

**E. Intentional and Negligent Interference with Prospective Business Relations**

A claim for intentional inference with prospective business relations requires pleading (1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. Ap. 4th 507, 521–22 (1996). Negligent interference with prospective business relations is the same, but requires the defendant's negligence instead of intentional acts. *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).

Here, Lloyd seems to bring these two claims for his relationships both to Mi3 and Zimperium. However, the complaint does not specify the terms of Lloyd's relationships to these companies (e.g., as employee or shareholder or board member?). The complaint is similarly unclear as to how those relationships were disrupted, because it is unclear what Lloyd's current relationship is with either company. To bring this claim, Lloyd must add more detail to define the relevant relationships and describe their disruption, if any. The Court therefore GRANTS the motion to dismiss the claims for intentional and negligent interference with prospective business relations. The plaintiff could allege additional facts to state valid claims, so the Court GRANTS leave to amend.

**F. Unfair Competition**

A claim for unfair competition under California Business and Professions Code § 7200 requires pleading unlawful, unfair, or fraudulent business act or practices or unfair, deceptive, untrue, or misleading advertising. If a plaintiff is not a resident of California, he must allege that the wrongful conduct underlying the claim occurred in California. *Aghaji v. Bank of America, N.A.*, 247 Cal. App. 4th 1110, 1119 (2016).

Mullenex argues that Lloyd has failed to state a claim for unfair competition because Lloyd has not claimed an injury in fact, has not met Rule 9(b) pleading

1   requirements, is not a resident of California and has not alleged wrongful acts occurred in

2   California, and may not seek disgorgement.  First, the Court FINDS that Lloyd has

3   claimed an injury in fact by specifying the monetary damages caused by Mullenex's

4   alleged conduct.  Compl. ¶ 114(C).  Next, the Court FINDS that Lloyd has met the Rule

5   9(b) pleading standard, as discussed above.  The Court addresses Mullenex's other two

6   arguments in turn.

7       Lloyd is a resident of Florida.  Compl. ¶ 5.  Mullenex argues that Lloyd has not

8   alleged that the wrongful conduct occurred in California.  Dkt. No. 21 at 17.  To that end,

9   the complaint alleges that Mullenex resides in California, that their company was

10  incorporated as a California corporation, and that Mullenex filed faulty documents with the

11  California Department of Corporations.  Compl. ¶¶ 6, 10, 11.  However, it is unclear

12  whether this conduct forms the basis of Lloyd's UCL claim because complaint only states

13  that "[a]t least since January 2018, Mullenex has committed acts of unfair competition . . .

14  by committing fraud on Lloyd . . ." without more particularity.  Compl. ¶ 106.  Most of the

15  conduct described in the complaint is not explicitly located in any specific place, though

16  the complaint at least suggests California as the setting if Mullenex lives there and the

17  company was created there.  However, the Court cannot speculate about where the conduct

18  occurred.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011).  The UCL requires

19  more specific pleading as to the location of the alleged conduct than Lloyd has provided

20  thus far.  *Id.*  Therefore, the court GRANTS the motion to dismiss the unfair competition

21  claim because Lloyd is a resident of Florida and has not clearly alleged that relevant

22  conduct took place in California.  The plaintiff could allege additional facts to state a valid

23  claim, so the Court GRANTS leave to amend.

24      Finally, Mullenex argues that Lloyd cannot seek disgorgement under the UCL.

25  Dkt. No. 21 at 19.  Disgorgement is not a claim, it is a remedy.  Lloyd's complaint is not

26  clear as to whether he seeks "restitutionary disgorgement" or "nonrestitutionary

27  disgorgement"—the former is permissible, the latter is not.  *Korea Supply Co. v. Lockheed

28  Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).  The Court STRIKES the complaint's

9

disgorgement remedy. Lloyd may amend the complaint to state this remedy permissibly, so the Court GRANTS leave to amend.

### G. Conversion

A claim for conversion requires that a plaintiff plead ownership or right to possession of property, defendant's wrongful act toward or disposition of the property that interferes with plaintiff's possession, and damage to the plaintiff. *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007).

Lloyd alleges that he had a right to proceeds from the cash payment and holdback payments from Zimperium. Compl. ¶ 79. He alleges that Mullenex interfered with his property by preventing Lloyd from receiving those funds. *Id.* ¶ 80. However, a closer look at the complaint reveals that Lloyd only alleges that Mi3 had ownership rights over the funds from Zimperium; Lloyd would be paid out by Mi3 as a shareholder. *Id.* Because Lloyd has not alleged that he personally had a right to the funds from Zimperium, he has failed to allege sufficient facts to establish the first element of a conversion claim. The Court therefore GRANTS the motion to dismiss the claim for conversion. The plaintiff could allege additional facts to state valid claims, so the Court GRANTS leave to amend.

### H. Accounting

A claim for accounting requires the plaintiff to plead that the defendant committed misconduct, violated a fiduciary duty, or otherwise owes money to the plaintiff. *Green Valley Landowners Assn. v. City of Vallejo*, 241 Cal. App. 4th 425, 442–43 (2015). The Court has found that Lloyd's claims for fraud, fraud in the inducement, and negligent misrepresentation are adequately pled. These allegations constitute misconduct to support a claim for accounting. As such, the Court DENIES the motion to dismiss the accounting claim.

## IV. Conclusion

The Court DENIES the motion to dismiss Lloyd's claims for fraud, fraud in the inducement, negligent misrepresentation, and accounting. The Court GRANTS the motion

to dismiss Lloyd's claims for conversion, breach of fiduciary duty, intentional interference with prospective business relations, negligent interference with prospective business relations, and unfair competition. The Court GRANTS leave to amend these claims. Lloyd may file an amended complaint curing the deficiencies identified in this Order by **December 6, 2019.** If Lloyd does not wish to amend the complaint, he must file a notice saying so by **December 6, 2019.** Mullenex does not need to file a responsive pleading to the claims that were not dismissed in this Order until 14 days after Lloyd files an amended complaint or notice.

**IT IS SO ORDERED.**

Dated: November 6, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge